IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

| | | |
|---|---|---|
| **WANDA RENEE TYREE,** | * | **CASE NO.: 10-68797-MHM** |
| Debtor. | * | |
| **WANDA RENEE TYREE,** | * | |
| Movant, | * | |
| vs. | * | |
| **GABRIEL GUZMAN and HAIT & EICHELZER,** | * | |
| Respondents. | * | |

## AMENDED RESPONDENTS' RESPONSE TO MOVANT'S STATEMENT OF DAMAGES AND REQUEST FOR HEARING

COME NOW, Gabriel Guzman and Hait & Eichelzer ("the Respondents"), and Responds to Movant's Statement of Damages and respectfully request a hearing on Movants Statement of Damages and shows the court as follows:

1

The Court entered an Order Granting Movant's Motion on September 27, 2010. For reasons unknown to Respondent, the court ordered that the September 27, 2010 Order not be served on the Respondents. (See attached Exhibit A, Order of September 27, 2010 with attached certificate of service from the court). Respondents first notice of the Order of September 27, 2010 was service of the Movant's Statement of Damages which occurred on October 7 2010.

2.

The Court in the September 27, 2010 Order directed Respondent to file a written response to Movants Statement of Damages within 10 days of the filing of the Movant's Statement of Damages. The tenth day from October 7, 2010 was Sunday October 17, 2010. Respondent is filing their response on Monday, October 18, 2010. Therefore, Respondent is filing their written response within ten (10) days in accordance with the federal rules.

3.

The court ordered Respondent to take necessary steps to affect the turnover of all the property to the Chapter 7 trustee. However, respondent was not served with the September 27, 2010 Order for reason unknown to the respondent. Respondent is now taking steps to turn the property over to the Chapter 7 Trustee and to pay any remaining storage fees.

4.

Movant filed an itemization of attorney's fees, totaling $6,967.50. Respondent would like the opportunity to show the court that these fees are inflated and unreasonable, and the opportunity to examine counsel on their itemization. Respondent requests a hearing to have an opportunity to prove to the court the inflation and unreasonableness of this itemization, to examine counsel for the Movant of this itemization, and for other issues regarding the courts Order of September 27, 2010.

5.

Pursuant to the Court's request attached as "Exhibit B" is the affidavit of paralegal Jennifer M. Zeigler.

Respectfully submitted,

*HAIT & EICHELZER*

By: __/s/_____
Alexander Gray Hait
GA Bar No.: 316359
P. Kent Eichelzer, III
GA Bar No.: 242315
Attorney for the Debtor
185 Stockwood Drive, Suite 100
Woodstock, Georgia 30188
770-517-0045

## CERTIFICATE OF SERVICE

The undersigned verifies that on December 3, 2010 a copy of the foregoing document was deposited into the United States Mail, postage prepaid, to the following parties set forth below.

__/s/_____
P. Kent Eichelzer, III

Edwin K. Palmer
Chapter 7 Trustee
P.O. Box 1284
Decatur, GA 30031

ADAM D. HERRING
Georgia Bar No. 441119
31 Atlanta St.
Marietta, GA 30060

Wanda Renee Tyree
6605 Destiny Dr.

Mableton, GA 30126

Khristie L. Kelly
Law Office of Robert S. Toomey, PC
708 N. Tennessee St.
Cartersville, GA 30120

"Exhibit A"
Case 10-68797-mhm   Doc 54   Filed 12/03/10   Entered 12/03/10 17:55:52   Desc Main
Case 10-68797-mhm   Doc 41   Filed 09/27/10   Entered 09/27/10 14:10:28   Desc Main
Document   Page 1 of 6

ENTERED ON DOCKET
SEP 27 2010

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| WANDA RENEE TYREE, | ) | CASE NO. 10-68797 - MHM |
| | ) | |
| Debtor. | ) | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| WANDA RENEE TYREE, | ) | |
| | ) | |
| Movant, | ) | |
| v. | ) | **CONTESTED MATTER** |
| | ) | |
| GABRIEL GUZMAN, | ) | |
| HAIT & EICHELZER, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING MOTION FOR
CONTEMPT AND DIRECTING TURNOVER**

Debtor filed a *Motion for Contempt for Violation of 11 U.S.C. §362* April 13, 2010

(Doc. No. 15) (the "Motion"). Debtor filed amendments to the Motion April 13, 2010

(Docs. No. 17 and 18) and April 14, 2010 (Doc. No. 24). Hearing was held April 19,

2010, at which counsel for Debtor were present, together with representatives of

Respondent law firm Hait & Eichelzer, who appeared on behalf of the law firm and

Respondent Gabriel Guzman. Debtor and Respondents filed post-hearing briefs.

The facts alleged in Debtor's motion are essentially undisputed. Respondent

Gabriel Guzman, represented by Respondent law firm (collectively, "Respondents"),

obtained a default judgment against Debtor August 22, 2005, for $10 million, plus

$5 million punitive damages. A writ of *fieri facias* was recorded August 23, 2005. On February 2, 2010, Respondents directed the Cobb County Sheriff (the "Sheriff") to levy on certain of Debtor's personal property, consisting of household goods and furnishings and a vehicle (collectively, the "Property"). An execution sale was scheduled for April 6, 2010, but before the sale occurred, on March 26, 2010, Debtor filed a Chapter 7 bankruptcy petition. Debtor notified the Sheriff of the bankruptcy petition and the scheduled sale did not take place. Respondents did not, however, instruct the Sheriff to turn over the Property to Debtor.

In the motion, Debtor seeks compensatory and punitive damages for willful violation of the automatic stay of 11 U.S.C. §362(a) by Respondents. Debtor also seeks turnover of the Property.[1] Respondents contend, however, that upon levy of the Property by the Sheriff, Debtor was divested of all right, title and interest in the Property, so that upon filing of Debtor's bankruptcy petition, the Property did not become property of the estate and was not subject to the automatic stay.

The starting point for the analysis of this dispute is *United States v. Whiting Pools, Inc.* 462 U.S. 198 (1983). In that case, which was decided under the Bankruptcy Code enacted in 1978, the debtor sought turnover from the Internal Revenue Service ("IRS") of personal property on which the IRS had levied prepetition pursuant to a federal tax lien.

---

[1] Pursuant to Bankruptcy Rule 7001, a proceeding for turnover should be filed as an adversary proceeding, which Debtor did not do. It does, appear, however, that Respondents were served in accordance with Bankruptcy Rule 7004 and have appeared to oppose the Motion without objecting to the procedural deficiency of failure to file an adversary proceeding. Therefore, such deficiency appears to have been waived.

2

In its analysis, the Supreme Court recognized that the scope of the §541 definition of property of the estate is broad and "is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code." *Id.* at 205. The Court also explained:

> Interests in the seized property that could have been exercised by the debtor – in this case, the rights to notice and the surplus from a tax sale...are already part of the estate by virtue of §541(a)(1). The fact that §542 grants the trustee greater rights than those held by the debtor prior to filing the petition is consistent with other provisions of the Bankruptcy Code that address the scope of the estate.

The Court concluded that the "estate includes property of the debtor that has been seized by a creditor prior to the filing of a [bankruptcy] petition[.]" The Court went on to state, "Of course, if a tax levy or seizure transfers to the IRS ownership of the property seized, §542 may not apply." The Court noted, however:

> The IRS is obligated to return to the debtor any surplus from a sale. 26 U.S.C. §6342(b). Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale.

Respondents contend the Georgia execution law of levy and sale of personalty presents a critical distinction from the facts in *Whiting Pools*. Although Georgia law provides debtors the rights of notice and payment of surplus from a sale, Respondents assert that the Internal Revenue Code provides tax debtors with a right of redemption that is absent in the Georgia execution law for personalty. This lack of any right of redemption, Respondents argue, means that when, upon levy, a judgment debtor is divested of possession of personalty, the judgment debtor is divested of title to personalty;

3

any subsequent sale is immaterial to divesting the judgment debtor of an interest in the personalty.

A diligent search of Georgia law has failed to discover any case law that verifies or negates Respondent's argument, or that defines when a judgment debtor is divested of title to personal property. Other jurisdictions have touched on the issue in the context of garnishment.[2] In *Woodburn Village Condominium Unit Owners Assn. v. Polly*, 2008 WL 5786899 (Bankr. E.D. Va. 2008), the judgment creditor served a summons of garnishment upon the debtor's bank, but the debtor's bankruptcy case was filed before the date for the turnover of the funds by the bank. The judgment creditor took the position that the garnishment had divested the debtor of ownership of the funds. Nevertheless, the judgment creditor took no steps postpetition to obtain the funds. In determining that the garnished fund did become property of the debtor's bankruptcy estate, the bankruptcy court relied on clearly stated Virginia law that a judgment debtor was not divested of ownership of garnished funds until they were paid to the judgment creditor. The court went on to note that the judgment creditor's status as a secured creditor was "largely illusory," because the Bankruptcy Code provided for avoidance of the judgment lien, either by the Chapter 7 trustee or the debtor.[3]

---

[2] In the case of *In re Johnson*, 262 B.R. 831 (Bankr. D. Idaho 2001), the court found the judgment creditor violated the automatic stay by failing to take steps to have the sheriff turn over the household goods and furnishings of the debtor that had been levied prepetition. The opinion contained no indication that the arguments of ownership raised in the instant case were interposed by the judgment creditor in *Johnson*.

[3] By order entered June 24, 2010, Debtor's motion to avoid Respondent Guzman's judgment lien was granted (Doc. No. 37).

4

In the case of *In re Augenbaugh,* 2002 WL 33939738 (Bankr. D. Idaho 2002), in connection with a continuing garnishment by a judgment creditor, funds that had been withheld from the debtor's prepetition wages were turned over to the judgment creditor postpetition. The judgment creditor declined the debtor's demand for turnover of the funds, asserting that the garnishment had terminated Debtor's interest in the prepetition garnished portion of the wages. The judgment creditor also asserted that mere acceptance of the payment of the garnished funds did not violate the stay. The court disagreed, again based on clearly stated state law, finding that a garnishment creates a lien but does not convey title.

The *Whiting Pools* decision was apparently not based upon any right of redemption the debtor had under the Internal Revenue Code, as redemption is not mentioned in that opinion. The opinion mentions only the right of the debtor of notice and to surplus proceeds, rights which judgment debtors in Georgia possess under the Georgia Code. Otherwise, the facts in *Whiting Pools* are not meaningfully distinguishable from those in the instant case. Respondents' failure to turn over the Property constitutes a violation of the automatic stay. Under §542, turnover of the Property to the Chapter 7 Trustee is required.[4]

A violation of the automatic stay is willful if the creditor knew of the existence of the stay and intentionally acted in violation of the stay. *Barnett v. Edwards (In re Edwards),* 214 B.R. 613, 620 (9th Cir. BAP 1997). Neither a good faith belief that the

---

[4] Section 542 requires turnover to the Trustee of property of the estate and of property claimed by Debtor as exempt property. Debtor has claimed the Property exempt.

5

creditor had a right to the property nor good faith reliance on the advice of counsel is relevant. *Id.* Therefore, under the mandatory provisions of §362(k), Debtor is entitled to recover actual damages, including costs and attorneys fees. As actual damages, the Motion mentions storage fees and attorneys fees, but those fees are not quantified. An award of punitive damages in inappropriate, given the plausibility of Respondents' legal argument and the lack of Georgia law on the issue. Accordingly, it is hereby

ORDERED that Debtor's motion is *granted*: Within 14 days of the date of entry of this order, Respondents shall take the steps necessary to effect a turnover of all the Property to the Chapter 7 Trustee, including, if necessary, the payment of all storage fees required to obtain a release of the Property. It is further

ORDERED that, within 14 days of the date of entry of this order, Debtor shall file an itemization of actual damages she claims in connection with Respondents' violation of the automatic stay, and shall serve such document upon Respondents, who are allowed 10 days from the date of service to file a written response. If no response is filed, an order awarding damages may be entered without further notice or hearing. If a response is filed, a hearing will be scheduled if specifically requested by either party, setting forth the reason a hearing is necessary; or if an accurate resolution of the issues appears to require a hearing. Otherwise, an order may be entered without further notice or hearing.

**The Clerk, U.S. Bankruptcy Court, is directed to serve** a copy of this order upon Debtor, Debtor's attorney, and the Chapter 13 Trustee.

IT IS SO ORDERED, this the 24th day of September, 2010.

MARGARET H. MURPHY
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION
IN RE:

| | | |
|---|---|---|
| WANDA RENEE TYREE, | * | CASE NO.: 10-68797-MHM |
| Debtor. | * | |
| WANDA RENEE TYREE, | * | |
| Movant, | * | |
| vs. | * | |
| GABRIEL GUZMAN and HAIT & EICHELZER, | * | |
| Respondents. | * | |

## AFFIDAVIT

COMES NOW, Jennifer M. Zeigler Paralegal, having been duly sworn hereby testifies as follows:

1.

My name is Jennifer M. Zeigler and I am over the age of eighteen and am otherwise competent to testify in the matter currently pending before the Court.

2.

On November 2, 2010, I had a meeting with Mr. Hait and Mr. Eichelzer to discuss our prior conversations from the week before in regard to the levy of Ms. Tyree, wherein I was directed to return Ms. Tyree's belongings from the Sheriff's Levy.

3.

Directly after my meeting in the afternoon on November 2, 2010, I called Sgt. Cindy Hughes, Field Operations, Civil Section of the Cobb County Sheriff's Department. I let Sgt.

Hughes know that the Court Ordered our firm to return the levied items to Ms. Tyree. I told Sgt. Hughes that I needed to contact some moving companies and asked Sgt Hughes if she would mind contacting Ms. Tyree to find out a convenient time that we could return her belongings. Sgt. Hughes' reply was that in this situation the other party is contacted and notified that they need to come pick up their belongings. I told Sgt. Hughes that was not necessary and if she could schedule a time with Ms. Tyree we would have a moving company come to the storage facility, load up the items, and then return them to where we removed them. She replied that we were being generous and would be happy to make the call for us.

4.

On November 2, 2010 after speaking with Sgt. Hughes, I called Mary from Barrow Wrecker Service. I explained that we needed to return the vehicle to the owner per the Courts direction and asked for the final invoice amount for storing the vehicle. I asked her to include the price of taking the vehicle back to the owner's residence as she explained that it was $10.00 per day for the length that they kept the vehicle, Mary then replied that she would have to check the file and placed me on hold. Mary returned to the line saying that she was unable to locate the vehicle that they had just had an auction and were very busy and would need for me to call her back the following day.

5.

On November 3, 2010, I called Mary back to check on the status of the vehicle. She notified me that they were extremely busy and had not had time to locate the vehicle. I explained the severity of the situation and Mary said she would do her best to find it.

6.

Later that morning on November 3, 2010, I followed up with Sgt. Hughes by leaving her a voicemail.

7.

After leaving a voicemail for Sgt. Hughes on November 3, 2010, I spent time researching movers in the area who were licensed and insured. After reading the reviews, I contacted Around the Town Movers and tentatively reserved Friday, November 5, 2010, to give the Sheriff's Department ample time to discuss the matter with Ms. Tyree and for the Wrecker Service to locate the vehicle.

8.

On November 4, 2010, at approximately 9:30 a.m., I again contacted Mary at Barrow Wrecker Service who stated that she was still trying to locate the vehicle.

9.

On November 4, 2010, at approximately 9:34 a.m., I again followed up with a call to Sgt. Hughes. During the conversation, I spoke with a Deputy who said he knew Sgt. Hughes had been working on getting a hold of Ms. Tyree but was unsure if Sgt. Hughes was able to make contact with Ms. Tyree. I was informed that Sgt. Hughes was not there at the time but that a message would be passed on.

10.

On November 4, 2010, approximately 1:15 p.m., I called Around The Town Movers and informed them that I would need to change the tentative date and inquired as to if they may be available first thing Monday, November 8, 2010.

11.

On November 5, 2010, I called Mary at Barrow Wrecker Service and was happy to hear the excitement in her voice when she told me that she had located the vehicle. I let Mary know that the Sheriff's Department was contacting Ms. Tyree as to a convenient time that we could return the items to Ms. Tyree and would get back with Mary as soon as I spoke with Sgt.

Hughes. Mary told me that in order to release the vehicle I would need to get an Impound Release form from the Sheriff's Department.

12.

On November 5, 2010 at approximately 3:45 p.m., I drafted a letter to Sgt. Hughes and sent it via facsimile in regard to status attached hereto as exhibit "A".

13.

On November 5, 2010 at 4:10 p.m., before I could attach the letter and send it by email, I received an email from Sgt. Hughes apologizing for not contacting me the day before and letting me know that Ms. Tyree was fine with us returning the items sometime after 8:30 or 9:00 (on an undisclosed date) Said email is attached as exhibit "B".

14.

On November 5, 2010 at 4:14 p.m., I responded to Sgt. Hughes' email, attached hereto as exhibit "C". I proceeded to immediately contact Sgt. Hughes by phone at approximately 4:15 p.m. to clarify what day and time (the email from Sgt. Hughes did not stipulate if it was a.m. or p.m., only 8:30 or 9:00) was convenient for Ms. Tyree. Sgt. Hughes confirmed that November 8, 2010, after 9:00 a.m. would be most convenient for Ms. Tyree. I then told Sgt. Hughes that we needed an Impound Release Form, wherein Sgt. Hughes explained that the Deputy was involved with turning the vehicle over and we did not need the form.

15.

On November 5, 2010 at approximately 4:20 p.m., I contacted Mary at Barrow Wrecker Service and let her know that we had an agreement to return the vehicle on Monday morning to Ms. Tyree's residence and advised Mary what Sgt. Hughes said about the Impound Release Form, Mary agreed at that point that we did not need the form.

16.

On November, 5, 2010 at approximately 4:35 p.m., I contacted Around the Town Movers to confirm that we were set for first thing Monday, November 8, 2010, wherein they would meet a representative from our office at Town Center Storage, load the items and then unload the items at Ms. Tyree's residence.

17.

On Monday November 8, 2010, I arrived at Town Center Storage at 7:57 a.m. and met the Movers. The Deputy (Deputy Cunningham, I believe) met us around 8:35 a.m. as he was running late from a shift meeting. Once the deputy arrived he let us in. At that time I supervised the Movers load the entire contents of the storage facility into the truck for delivery. Once I ensured that the items were loaded and in transport to Ms. Tyree's residence, I returned to the office as the Deputy and another paralegal from our firm, Andrea Shea, traveled to Ms. Tyree's residence.

Further affiant sayeth not.

Dated this 3rd day of December, 2010.

_____
Jennifer M. Zeigler, Affiant

Sworn to and subscribed before me this 3 day of December, 2010

_____
Notary Public

[Notary seal: DAWN DICKERSON, MY COMMISSION EXPIRES JAN 26 2014, COBB COUNTY, GA, NOTARY PUBLIC]

| Alexander Gray Hait* | **HAIT & EICHELZER** | 185 Stockwood Drive |
| P. Kent Eichelzer, III | | Suite 100 |
| Elizabeth J. Kuhn | ATTORNEYS-AT-LAW | Woodstock, Georgia 30188 |
| | | (P) 770-517-0045 |
| | | (F) 770-517-0350 |

*Also Admitted in New Jersey & New York

Personal Injury • Family Law • Debt Relief
Estate Planning • Wills and Trusts
www.he-law.com

Smyrna Office
1326 Concord Road
Smyrna, GA 30080
770-421-0401

November 5, 2010

Please reply to
Woodstock Office

*Via email, U.S. Mail, and Facsimile*

Sgt. Cindy Hughes
Operations Division
Civil Section
Cobb County Sheriff's Office
185 Roswell Street
Marietta, GA 30090

Re:    Levied property of Wanda Tyree
       6605 Destiny Drive
       Mableton, GA 30126

Dear Ms. Hughes,

Please accept this as a follow up to our conversation of November 2, 2010 wherein I notified you that pursuant to the ruling made by the Court we were returning all items levied at the above mentioned address. Please let me know if you were able to get in touch with Ms. Tyree and if so what is a convenient time that we may return such items.

Your response and attention to this matter is greatly appreciated.

Sincerely yours,

HAIT & EICHELZER

Jennifer Zeigler
Paralegal to Alexander G. Hait, Esq.

Exhibit "A"

```
TRANSMISSION VERIFICATION REPORT

                                        TIME   : 11/05/2010 15:56
                                        NAME   :
                                        FAX    : 7705170350
                                        TEL    : 7705170045
                                        SER.#  : 000E0N443294


DATE,TIME              11/05 15:56
FAX NO./NAME           7704994705
DURATION               00:00:21
PAGE(S)                01
RESULT                 OK
MODE                   STANDARD
                       ECM
```

Alexander Gray Hait*  
P. Kent Eichelzer, III  
Elizabeth J. Kuhn  

# HAIT & EICHELZER
### ATTORNEYS-AT-LAW

185 Stockwood Drive  
Suite 100  
Woodstock, Georgia 30188  
(P) 770-517-0045  
(F) 770-517-0350  

*Also Admitted in New Jersey & New York

Personal Injury • Family Law • Debt Relief  
Estate Planning • Wills and Trusts  
www.he-law.com

Smyrna Office  
1326 Concord Road  
Smyrna, GA 30080  
770-421-0401

Please reply to  
Woodstock Office

November 5, 2010

*Via email, U.S. Mail, and Facsimile*

Sgt. Cindy Hughes  
Operations Division  
Civil Section  
Cobb County Sheriff's Office  
185 Roswell Street  
Marietta, GA 30090

    Re:   Levied property of Wanda Tyree  
              6605 Destiny Drive  
              Mableton, GA 30126

Dear Ms. Hughes,

      Please accept this as a follow up to our conversation of November 2, 2010 wherein I notified you that pursuant to the ruling made by the Court we were returning all items levied at the above mentioned address. Please let me know if you were able to get in touch with Ms. Tyree and if so what is a convenient time that

From: "Hughes, Cindy" <so89004@CobbSheriff.Org>
Subject: **Wanda Tyree property**
Date: November 5, 2010 4:10:11 PM EDT
To: <jzeigler@haitlaw.com>
1 Attachment, 3.7 KB

Ms. Zeigler,

As per our conversation, I called Ms. Tyree and made contact with her. I apologize, I meant to call you yesterday and let you know that I spoke with her. I told her that your moving crew would be at the storage facility at 8:00 and would be loading the property and would be at her house as soon as everything was loaded. She said she would be home by 8:30 or 9:00, which I told her should be fine, as it would take some time to get everything loaded.

Thank you very much for your assistance and, again, I apologize for not getting in touch with you yesterday.

Sincerely,

**Sgt. Cindy Hughes**
*Field Operations*
*Civil Section*
*office (770)499-4641*
*fax (770)499-4683*
cindy.hughes@cobbcounty.org

Exhibit "B"

**From:** Jennifer Zeigler <jzeigler@haitlaw.com>
**Subject: Re: Wanda Tyree property**
**Date:** November 5, 2010 4:14:07 PM EDT
**To:** "Hughes, Cindy" <so89004@CobbSheriff.Org>
**Cc:** Alex Hait <legaljacket@mac.com>, Amy Brown <abrown@haitlaw.com>, Renee Allen <reneenicoleallenjd@gmail.com>, Front Desk <h_and_e@me.com>, Elizabeth Kuhn <lizzkuhn@mac.com>, Candace Key <add75@me.com>, Eichelzer III Eichelzer <kentike@bellsouth.net>

Thank you Cindy, was this for Monday? Also in order for the Barrow Wrecker service to return the vehicle they need an impound release from the Sheriff's department, can you have that ready for me by Monday morning?

Jennifer Zeigler
Paralegal to Alexander G. Hait, Esq.
& Elizabeth J. Kuhn, Esq.
185 Stockwood Drive, Ste. 100
Woodstock, GA 30188
(P) 770.517.0045
(F) 770.517.0350
jzeigler@haitlaw.com
www.he-law.com


On Nov 5, 2010, at 4:10 PM, Hughes, Cindy wrote:

> Ms. Zeigler,
>
> As per our conversation, I called Ms. Tyree and made contact with her. I apologize, I meant to call you yesterday and let you know that I spoke with her. I told her that your moving crew would be at the storage facility at 8:00 and would be loading the property and would be at her house as soon as everything was loaded. She said she would be home by 8:30 or 9:00, which I told her should be fine, as it would take some time to get everything loaded.
>
> Thank you very much for your assistance and, again, I apologize for not getting in touch with you yesterday.
>
> Sincerely,
>
> ### *Sgt. Cindy Hughes*
> *Field Operations*
> *Civil Section*
> *office (770)499-4641*
> *fax (770)499-4683*
> *cindy.hughes@cobbcounty.org*

Exhibit "C"